# Richmond

## In Re Nicholas' Will.

### November 12, 1914.

1. Wills—*Production—Surrender of Possession—Code, Section 2535—Jurisdiction.*—Section 2535 of the Code providing that "Any such court, on being informed that a person has in his custody the will of a testator, may summon him, and by proper process compel him to produce the same," when read alone does not seem to have been intended as an original and independent remedy, but merely to afford an ancillary means of facilitating the probate of wills, and furnishes no authority to a court to require a legatee under a will, which no one is seeking to have probated, to transfer the possession thereof to its clerk merely for safe-keeping. This construction of section 2535 is more manifest when read in connection with the other sections of the Code by which it is surrounded.

Error to a judgment of the Circuit Court of Rockingham county.

*Reversed.*

The opinion states the case.

*D. O. Dechert* and *E. C. Martz,* for the plaintiff in error.

*Sipe & Harris,* for the defendants in error.

Harrison, J., delivered the opinion of the court.

This proceeding at law was inaugurated by the Circuit Court of Rockingham county upon its own motion, and resulted in a final order requiring D. O. Dechert, attorney at law, to deliver to the clerk of that court for safe-

keeping a certain paper in his possession, purporting to be the will of George M. Nicholas, deceased. The propriety of the order mentioned is called in question by the present writ of error, which was awarded upon the petition of D. O. Dechert alleging that he is aggrieved thereby.

The record shows that George M. Nicholas died in August, 1912, under circumstances that excited the suspicion that he had been murdered, and an investigation developed the fact of arsenic in his stomach in quantities sufficient to have caused his death, which confirmed the suspicion that he had been foully dealt with. Several weeks after the death of Nicholas, Charles D. Harrison, the Commonwealth's attorney of Rockingham county, received through the mail a package, addressed to the "Prosecuting Attorney," containing a writing purporting to be the last will of the deceased, under which one Ella McClendon, of Sturdivant, Missouri, was the beneficiary. Ascertaining that Ella McClendon was an actual person, the Commonwealth's attorney retained the paper, thinking that it might be useful in leading to the identification of the murderer of Nicholas, until he turned it over to D. O. Dechert, who, together with E. C. Martz, had been engaged by Ella McClendon as her counsel, with the understanding that it should be returned whenever the prosecuting attorney might need it in his official capacity. The paper had since remained exclusively in the posession of D. O. Dechert, attorney, until the order complained of, no steps having been taken on behalf of Miss McClendon to probate the writing, nor had she at any time asserted any rights thereunder, either in court or *in pais*.

In January, 1914, the heirs at law of George M. Nicholas presented to the judge of the Circuit Court of Rockingham county their bill, alleging that in 1913 sundry

newspaper publications of the existence of the writing in question had appeared; that complainants had not seen the writing but asserted that it was not the will of th‹› decedent, Nicholas, and that if it purported to be a holographic will of the decedent it was a forgery; and that the paper constituted a cloud on the title to the estate of the decedent. The bill prayed that Miss McClendon and her attorneys be made defendants and required to produce the writing, and that the same should be cancelled. Thereupon an injunction was granted restraining the attorneys of Miss McClendon from removing the writing beyond the jurisdiction of the court, and a rule awarded requiring them to show cause why they shoul·l not produce the same and file it with the clerk of the court.

In answer to this rule it was insisted that the prayer for the production of the document was in the nature of a prayer for discovery, which was not enforceable in a proceeding by rule, even in a case where equity could compel discovery; that the defendant attorneys had no personal interest in the controversy, and that any process against them, except as witnesses, could only be operative upon their client; that upon the assumption of the truth of the allegations of the bill, the writing constituted evidence which might be used against Miss McClendon as tending to incriminate her upon a charge of forgery, so that she was privileged against its production under the rule against self-incrimination, and that this privilege extended to prevent its being taken from the possession of her attorneys; that the bill was without equity, because the validity of a will was not triable in chancery upon a bill of the character here involved, even upon an allegation that the same was fraudulent; that the bill did not allege any fact constituting ground for apprehension that the writing would be

transmitted beyond the jurisdiction of the court, nor were its allegations sufficient to show that the writing constituted a cloud upon title; and that it was not alleged, nor was it true, that any of the defendants published, caused to be published, inspired, or were in any way responsible for the newspaper publications mentioned.

Upon the hearing of this chancery cause and the motion therein to quash the rule requiring the attorneys of Miss McClendon to show cause why they should not produce and file the writing with the clerk, the circuit court announced that it would consider the propriety of making an order on the law side of the court requiring the production of the writing under the provisions of section 2535 of the Code; and thereupon proceeded at law, without request for such action, to call the Commonwealth's attorney, who testified to the facts and circumstances attending his receipt of the paper, to draw from D. O. Dechert an admission that the writing in question was in his possession in his capacity as attorney at law for Miss McClendon, and to consider as evidence in the law proceeding the chancery suit mentioned. Upon the facts thus arrived at, the order in the law proceeding complained of was entered.

This was an unusual proceeding, without precedent so far as we have been able to discover, certainly in this jurisdiction. The authority invoked by the court in support of its action was section 2535 of the Code of 1904, which is as follows: "Any such court, upon being informed that a person has in his custody the will of a testator, may summon him and by proper process compel him to produce the same."

This section appears in the midst of and as one of the provisions of the Code of 1904 relating to wills and probate proceedings; and it occurs in substantially the same

language and setting in our statutes from a very early day in the history of the Commonwealth.

With deference to the learned judge of the circuit court, we are unable to perceive that this section furnishes any warrant for the action complained of. When the language of the section is alone read, it does not seem to have been intended as an original and independent remedy, but merely to afford an ancillary means of facilitating the probate of wills. This construction appears manifest when the section is read in the light of those surrounding it in the chapter on wills and their probate. The section clearly contemplates a probate proceeding in which the court, when *informed* that a person has in his custody *the will* of a testator, is given power to compel its production, so that, on the motion for probate, the matter may be determined; otherwise, to what end is the will, or paper purporting to be one, to be produced? Section 2535 provides only for the production of the document. What is to be done with it in a case like the present when no one, beneficiary or other person, is seeking its probate? The effect of the circuit court's action was to add another provision to the statute under which the court could compel the production of a paper—not for probate, but for the sole purpose of having it safely kept by the clerk of the court, although no one was asking that it be done, and the beneficiary was satisfied of its safety in the repository from which it was taken.

We are of opinion that this original proceeding at law for the sole purpose of requiring D. O. Dechert to transfer the custody of this paper from himself, as an attorney for Miss McClendon, to the clerk of the Circuit Court of Rockingham for safe-keeping, was, under the circumstances of this case, without warrant of law.

The circuit court being without authority to enter the order complained of, it is unnecessary to consider

whether or not it was in violation of the privilege of Miss McClendon against self-incrimination.

The order complained of must be reversed, and this court will enter an order dismissing the ex parte common law proceeding without costs.

*Reversed.*